Alex R. Straus (SBN 321366)
**WHITFIELD BRYSON LLP**
16748 McCormick Street
Los Angeles, CA 91436
(917) 471-1894 (phone)
(615) 921-6501 (fax)
astraus@whitfieldbryson.com

Caroline Ramsey Taylor*
**WHITFIELD BRYSON LLP**
518 Monroe Street
Nashville, TN 37208
(615) 921-6500 (phone)
(615) 921-6501 (fax)
caroline@whitfieldbryson.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTIE RAMIREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HB USA HOLDINGS, INC., d/b/a Huda Beauty,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **BREACH OF IMPLIED WARRANTY**<br>2. **UNJUST ENRICHMENT (In the Alternative)**<br>3. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, Cal. Bus. & Prof. Code § 17500, *et seq.***<br>4. **VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT, Cal. Bus. & Prof. Code § 1750, *et seq.***<br>5. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, *et seq.***<br>6. **NEGLIGENT FAILURE TO TEST**<br>7. **NEGLIGENT FAILURE TO WARN**<br>8. **STRICT LIABILITY – DEFECTIVE DESIGN AND/OR MANUFACTURE** |

## CLASS ACTION COMPLAINT

Plaintiff Cristie Ramirez ("Plaintiff") brings this Class Action Complaint against Defendant HB USA Holdings, Inc., d/b/a Huda Beauty ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experience and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1. This is a civil class action brought by Plaintiff on behalf of consumers who purchased Defendant's "Neon Obsession Palette – Neon Green", "Neon Obsession Palette – Neon Pink" or "Neon Obsession Palette – Neon Orange" (collectively, "Neon Obsession" or "Product"), which are used for personal cosmetic purposes. Plaintiff seeks damages and equitable remedies for herself, and for the putative Class (defined *infra* ¶ 71).

2. Defendant designs, formulates, manufactures, markets, advertises, distributes, and sells Neon Obsession to consumers throughout the United States, including in the State of California.

3. In or around May 2019, Defendant launched and marketed Neon Obsession as eyeshadow.



4.     In the weeks leading up to the May 30, 2019 launch, Defendant and its founder and Chief Executive Officer, Huda Kattan ("Ms. Kattan"), promoted Neon Obsession for use around the eyes. In an article published by Condé Nast's www.allure.com on May 28, 2019, Ms. Kattan encouraged consumers to use Neon Obsession directly on their eyes:[1]

- "With these bright neon colors, you can't really go wrong with a simple monochromatic color wash on the lids."

- "One of my favorites is a super-simple, graphic neon liner look."

- "I start from the inside and shape the wing as I move away from the eye."

5.     For months surrounding the launch of Neon Obsession, Defendant posted numerous videos on its webpage and official Instagram account instructing and encouraging consumers to apply Neon Obsession directly to the eye area.

6.     At no time has Defendant communicated or otherwise indicated any intended use for Neon Obsession other than for use on the eyes and surrounding area.

7.     Defendant intentionally designed Neon Obsession packaging to look like eyeshadow. Defendant markets and advertises Neon Obsession in combination and coordination with its other Obsession-branded eyeshadow products. In addition to the outside packaging, the individual color squares inside the Neon Obsession products are designed and arranged to look identical to Defendant's other eyeshadow products.

8.     Ms. Kattan has also publicly referred to Neon Obsession as "eyeshadow" and Defendant's website continues to promote Neon Obsession for use around the eyes.[2]

---

[1]     https://www.allure.com/story/huda-beauty-neon-obsessions-eye-shadow-palettes-interview (last visited May 3, 2020).

[2]     https://hudabeauty.com/us/en_US/shop/neon-obsessions-palette-HB00077M.html (last visited May 3, 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    9.    As a direct and intended result of Defendant's advertising, marketing,
17  instructional videos and public statements, consumers, including Plaintiff, purchased
18  Neon Obsession for use around the eyes.

19    10.    Contrary to representations made by Defendant in marketing materials,
20  advertisements, social media and instructional videos on its website, Neon Obsession is
21  not safe for use around the eyes.

22    11.    Plaintiff and others who applied Neon Obsession around their eyes – as
23  instructed and encouraged by Defendant – suffered physical injuries including, but not
24  limited to, rashes, painful eye irritation, and skin inflammations and discolorations.
25  Many of these symptoms are painful, embarrassing, and last for several days.

26    12.    Defendant knew or should have known of these dangers, and has
27  undertaken a deliberate and willful pattern of conduct (including taking active

28

measures) aimed at deceiving consumers, including Plaintiff, to believe that Neon Obsession is safe for use around the eyes.

13.     As more fully described below, every Neon Obsession product sold suffers from a common defect that makes it unreasonably dangerous and not able to be used for its intended purpose ( "Defect").

14.     At all relevant times, Defendant knew about the Defect, but nevertheless marketed, advertised, and sold Neon Obsession for use around the eyes without adequately warning consumers that it is not recommended for use around the eyes and may cause physical injuries.

15.     Rather than conspicuously placing a prominent and conspicuous safety warning altering consumers to the health and safety consequences of using Neon Obsession for its intended use, Defendant concealed a six-word inadequate disclaimer underneath a label that covers the entire back panel of the Product. Specifically, this hidden disclaimer states that Neon Obsession is "not intended for the eye area" (the "Hidden Disclaimer").

16.     Defendant's Hidden Disclaimer falls far short of being a prominent and conspicuous warning detailing the consequences resulting from the intended use of its Product. Rather, the Hidden Disclaimer is placed in the least prominent location, printed in the most inconspicuous style possible, and omits any references to the harmful consequences of using the Product for its intended purpose.

17.     The Hidden Disclaimer cannot be accessed prior to purchase and directly contradicts the Product's marketing, advertisements, and instructional videos posted on its websites, official social media platforms, and official YouTube channel.

18.     When consumers complained about the injuries they suffered as a result of using Neon Obsession, and media outlets reported on the concealed Hidden Disclaimer, Defendant maintained that Neon Obsession is intended to be used as eyeshadow, and that the only reason it is not officially called eyeshadow is to sidestep FDA regulation. Defendant stated as follows in July 2019:

1
2
3
4
5

> [I]t's only in the U.S. that some pigments used in [Neon Obsession] palettes are not yet FDA-approved for use around the eyes. That is why in the U.S. they are categorized as multiuse pigment palettes. Everywhere else in the world, these pigments are approved for use around the eye and are categorized as eye shadows.[3]

6   19.    This official statement is Defendant's admission that Neon Obsession was
7   intended to be used around the eye area – directly contradicting the Hidden Disclaimer
8   concealed under a sticker – and that its decision not to officially call the Product "eye
9   shadow" when sold in the United States is to intentionally flout U.S. law.

10   20.    As a direct and proximate result of Defendant's concealment of the Defect
11   and its failure to sufficiently warn consumers about it or its harmful consequences prior
12   to their purchase, Plaintiff and other similarly situated consumers ("Class" or "Class
13   Members") purchased and used Defendant's defective Neon Obsession on their eye
14   areas to their detriment.

15   21.    Plaintiff and Class Members were unaware of the Defect at the time they
16   purchased Neon Obsession. Had Plaintiff and Class Members known Neon Obsession
17   contained a Defect rendering it unfit for its intended purpose, they would not have
18   purchased Neon Obsession or would have paid substantially less for Neon Obsession.

19   22.    Plaintiff and all putative Class Members purchased a Product which
20   suffered from the same Defect at the point of sale, and poses substantially the same
21   safety risk to Plaintiff, Class Members, consumers, and the public. Neon Obsession
22   cannot be used safely for its intended purpose as represented.

23   23.    Plaintiff and each of the Class Members have been damaged and suffered
24   an injury in fact caused by Defendant's false, fraudulent, unfair, deceptive, and
25   misleading practices, as set forth herein, and seek compensatory damages and injunctive
26   relief.

27
28   [3] https://www.teenvogue.com/story/safely-using-neon-colored-makeup (last accessed May 5, 2020).

CLASS ACTION COMPLAINT

24.     Given the massive quantities of Neon Obsession believed to have been sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

**JURISDICTION AND VENUE**

25.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some Members of the proposed Classes are citizens of a state different from Defendant.

26.     This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States and the State of California.

27.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because this District is where a substantial part of the conduct giving rise to Plaintiff's claims occurred, where Defendant transacts business, and where Plaintiff resides.

**PARTIES**

28.     Plaintiff Cristie Ramirez is a resident of Fontana, California who purchased and used Neon Obsession within the relevant time period.

29.     Defendant HB Holdings USA, Inc. is incorporated in Delaware with its principal place of business in Los Angeles, California.

**FACTUAL ALLEGATIONS**

30.     Huda Beauty is a cosmetics company launched in 2013 by Huda Kattan. The company sells more than 140 products from eyeshadow pallets to lip gloss. With more than $250 million in annual sales, Huda Beauty was valued by a prominent private equity firm, TSG Consumer Partners, at $1.2 billion at the end of 2017. Huda Beauty

has more than 3.9 million YouTube subscribers and claims to be the number one account on the Instagram Beauty section in the world, with over 26 million followers.[4]

31.    Neon Obsession is a group of neon colored "pressed pigment palettes" sold in three varieties: Neon Pink, Neon Green, and Neon Orange. Neon Obsession was launched in the United States on or about May 30, 2019.

32.    Without exception, every advertisement, marketing campaign, instructional video, and public statement produced and distributed in relation to Neon Obsession encourages consumers to use Neon Obsession on the eye area.

33.    At no time has Defendant indicated any intended use for Neon Obsession other than for use on the eyes and surrounding area.

34.    Before and after the Product launch, Defendant posted instructional videos on YouTube encouraging viewers to use Neon Obsession on the eye area.[5] While Defendant has since edited one such instructional video to remove any mention of Neon Obsession, links below the video still include the same instructional video with alternative editing. In the re-edited version, Ms. Kattan and her guest, both of whom have neon eyeshadow, discuss Neon Obsession specifically, and hold the Product up to the camera while Ms. Kattan applies neon eyeshadow to the guest's eye area.[6]

35.    On or around May 30, 2019, Defendant posted a video of Ms. Kattan applying the "Neon Pink" version of Neon Obsession on her own eyelids. That video has since been deleted from Defendant's YouTube channel.

36.    Until at least July 1, 2019, Defendant's website included a "HOW TO USE" section which instructed consumer to apply Neon Obsession to the "inner corners of eye" and "either on the eyelid, or along to lower lash line."

---

[4] https://hudabeauty.com/us/en_US/aboutus.html (last visited May 3, 2020).
[5] https://www.youtube.com/watch?v=6JZPF-cm52c&t=28s (last visited May 3, 2020).

[6] https://www.youtube.com/watch?v=BQGDHkJ99HM (last visited May 3, 2020).

CLASS ACTION COMPLAINT

37.   Defendant has since deleted this section of the Neon Obsession website.

38.   However, as of this filing, the Neon Obsession website still instructs and encourages consumers to apply Neon Obsession to the eye area. The "HOW TO USE" section now reads: "Huda's tip: Apply Overachiever concealer in shade Whipped Cream as a base to amplify pigment and intensify your looks." According to Defendant, its "Overachiever" is a product intended to be used on "the delicate skin around the eyes." In other words, Defendant has merely replaced direct encouragement to use Neon Obsession on the eye area with a slightly more indirect "HOW TO USE" instruction, which encourages the same and identically dangerous use of its Product.

39.   In other places, Defendant's website continues to directly promote the use of Neon Obsession as eyeshadow and encourages consumers to apply the Product directly onto the eye area. For example, the promotional video on Defendant's Neon

Obsession website shows a series of women holding the Neon Obsession Product up to their eyes. Each of the models' eyes are painted bright neon colors corresponding to the Neon Obsession color palettes. In addition, underneath the video and product information, is a series of images of women with neon eyeshadow corresponding to the Neon Obsession color palettes.



40. Defendant designed Neon Obsession packaging to look like eyeshadow. The individual color squares inside the Product are arranged to look identical to Defendant's other eyeshadow products. And Defendant continues to post pictures on Instagram and other official platforms with Neon Obsession included among Defendant's other Obsession-branded eyeshadow products.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16

41.     Defendant's advertisements promote and encourage using Neon Obsession as eyeshadow, picturing models with neon eyeshadow corresponding to the Neon Obsession color palettes.



17
18
19
20
21
22
23
24
25
26
27
28

42.     Upon information and belief, Defendant also allows and encourages its third-party retailers to market and sell Neon Obsession as eyeshadow. For example,

1  www.sephora.com sells Neon Obsession under its "Eyeshadow Palettes" dropdown
2  menu.[7]

3      43.    Consistent with Defendant's conduct, Sephora recently deleted all
4  references in its Neon Obsession "Details" section that specifically referred to the
5  Product as eyeshadow. Prior to these deletions, each of the nine color squares in each
6  Neon Obsession palette was identified as "Eyeshadows."

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22      44.    As a direct and intended result of Defendant's advertising, marketing, and
23  public statements regarding the Product, consumers purchased Neon Obsession for use
24  around the eyes.

25

26

27  _____
    [7] https://www.sephora.com/product/neon-obsessions-eyeshadow-palette-P445732 (last
28  visited May 5, 2020).

45.     Despite Defendant's efforts to market, advertise, and sell Neon Obsession for use as eyeshadow, however, Neon Obsession is not safe for use around the eye area.

46.     Neon Obsession contains at least five ingredients which are not approved by the Food and Drug Administration ("FDA") for use in cosmetics. In fact, Defendant is a repeat offender in this regard. In 2017, Defendant had six cosmetic products detained by the United States Customs and Border Protection for violating FDA regulations by attempting to import those cosmetic products into the United States from the United Arab Emirates.[8] Nonetheless, Defendant included all five of these pigments in Neon Obsession.

47.     As Defendant is aware, there are only seven fluorescent colors approved by the FDA for use in cosmetics: D&C Orange No. 5, No. 10, and No. 11; and D&C Red No. 21, No. 22, No. 27, and No. 28.[9] However, none of these seven colors are approved for use on the eye area.[10]

48.     In order to get around the FDA's regulations, Defendant invented the designation "multiuse pigment palette" and buried the words "not intended for the eye area" under a sticker which cannot be accessed before purchasing the Product, while continuing to market, advertise, instruct and encourage Plaintiff and those similarly situated, to use Neon Obsession as eyeshadow regardless of the known, but concealed, risks to their health and safety.

49.     Even after people began complaining about the dangers of using Neon Obsession as eyeshadow, as well as complaining about the insufficient Hidden Disclaimer under the back sticker, Defendant directly disavowed its own Hidden Disclaimer by claiming Neon Obsession was safe and simply not "yet" FDA approved.

---

[8] https://www.accessdata.fda.gov/cms_ia/importalert_130.html (last visited May 5, 2020).

[9] 21 CFR 74.2254, 74.2260, 74.2261, 74.2321, 74.2322, 74.2327, and 74.2328.

[10] Id.

CLASS ACTION COMPLAINT

> At Huda Beauty it's so important for us to listen to our community, and we appreciate all of your feedback and questions. We wanted to talk a little about the pigments in our Neon Obsessions Pigment Palettes and whether or not you can use them around the eye. Several brands, including Huda Beauty, have dealt with this U.S.-specific restriction and the confusion it can create. In this case, it's only in the U.S. that some pigments used in these palettes are not yet FDA-approved for use around the eyes. That is why in the U.S. they are categorized as multiuse pigment palettes. Everywhere else in the world, these pigments are approved for use around the eye and are categorized as eye shadows.[11]

50.     This statement was made in a July 2019 article in *Teen Vogue*. The article was singularly focused on the controversy surrounding Neon Obsession's dangers and Hidden Disclaimer.  Defendant had the opportunity to put consumers on notice of the known dangers of using Neon Obsession as eyeshadow via an internationally published magazine. Instead, Defendant amplified three aspects of its deceptive and fraudulent conduct: (i) its Hidden Disclaimer that Neon Obsession was "not intended for eye area" was a conscious attempt to evade U.S. law; (ii) its "multiuse pigment palette" designation is an intentional euphemism for eyeshadow; and (iii) the intended use of Neon Obsession is for application around the eye.

51.     Plaintiff bought Neon Obsession based on Defendant's marketing and advertisements, which unambiguously represented that the Product was intended for use on the eye area. She was not aware of the six-word Hidden Disclaimer concealed under a sticker covering the back of the packaging, and she used the Product on her eye area as Defendant encouraged consumers to do. After doing so, Plaintiff's eyes became red, itchy, and irritated eyes; a condition that lasted for days.

52.     The internet and social media are flooded with Neon Obsession users complaining both about similar injuries after using Neon Obsession as eyeshadow, and

---

[11] https://www.teenvogue.com/story/safely-using-neon-colored-makeup (last visited May 5, 2020).

CLASS ACTION COMPLAINT

the lack of an adequate warning.  For example, in April 2020, a prominent social media influencer posted a video showing her injuries after using Neon Obsession as instructed and encouraged by Defendant:[12]

53.     Defendant's own website also includes reviews complaining about significant injuries consistent with the injuries suffered by Plaintiff. For example, on March 31, 2020, two customers complained about skin staining after using Neon Obsession: [13]

> Sarah
> 1 star rating
> 03/31/20
> **False advertising**
> I used the pink pallet and my eyes swelled and burned for 24 hours. After further investigation I found a second hidden ingredient list saying that this product is not intended for the eyes. AN EYESHADOW PALLET NOT MEANT TO GO ON YOUR EYES

> Becky
> 1 star rating
> 03/31/20
> **It's use**
> Peel the back for ingredients... it's not for eyes... it will stain.

54.     Beginning as early as June 2019, less than two weeks after the Product launch, Defendant's main retailer, www.sephora.com, posted numerous complaints from customers about injuries consistent with those suffered by Plaintiff and complaints

---

[12] https://www.yahoo.com/lifestyle/2020-04-13-huda-beauty-neon-teen-tiktok-eye-makeup-sephora-23974459.html (last visited May 5, 2020).

[13] https://hudabeauty.com/us/en_US/shop/neon-obsessions-palette-green-HB00077.html (last visited May 5, 2020).

CLASS ACTION COMPLAINT

1    about the deceptive Hidden Disclaimer concealed underneath the sticker on the back of

2    the Neon Obsession packaging:[14]

3

4     13 Jun 2019

5

6    Color: Neon Pink

**The pigment left on skin!!**

7    OMG I just did makeup with this and the brightest pink left on my face

8    and I cannot remove it completely..... I even applied an eye primer under

it but it happened. I've never experienced like this before with any other

9    palette. I was so excited to use this one but cannot use it anymore. Return

it.

10

11

12     18 Aug 2019

13

14    Color: Neon Pink

I was really excited to try this palette and see what all the hype was.

15    Colors are definitely pigmented - but it will come at a cost. My eyelids

16    were stained pink for about 72 hours after using this palette. It didn't

matter how many showers I took how much makeup remover I used or

17    how many times I tried washing my face. Concealer failed to fully cover

18    it up in the following days. I immediately returned this product. I can't

get behind a formula that stains your skin for 72+ hours. Buyers beware

19

20

21     31 Aug 2019

22    Color: Neon Green

23    **Not For The Eyes, Read the ingredients on the back**

24    If you look at the fine print on the back of the product, it states that it is

not for use around the eyes. That contradicts how it is marketed. The

25    colors aren't as vibrant as the pictures. And I thought something was

26    wrong with my eyes after using this as an eyeshadow and quit wearing

27    _____

[14] https://www.sephora.com/product/neon-obsessions-eyeshadow-palette-P445732

28    (last visited May 5, 2020).

my contacts because of irritation. Then I realized this was not intended for the eye area and quit using it. I am back to wearing my contacts with no problems. I don't recommend this palette since it is not intended for the eyes and also is very sheer.

29 Mar 2020

 Color: Neon Pink

**stains, we gotta cancel**

now i know why this stained my eye!! i bought this awhile ago and a tik tok informed about the sticker under the ingredients label that said "not meant for eye area" i- it's an eyeshadow pallet?? and why'd she hide this? i'm canceling huda, first they steal from beauty bakery and now this?? trash.

29 Mar 2020

 Color: Neon Pink

**it says do not use on eyes on the package....**

i couldn't get it off my eyes for 3 days. i tried rubbing so hard my skin was way to tender. even bough expensive makeup remover/ soap/ everything NOTHING WORKED!!!!!

30 Mar 2020

 Color: Neon Pink

**Cheap and not worth the price**

IT IS NOT INTENDED FOR THE EYE AREA!!! stained my eyes really bad and couldn't take off.

31 Mar 2020

 Color: Neon Orange

**not for the eye area?**

stains the eye and the actual label that says not for the eye area is hidden under a sticker. why is an eyeshadow palette not for the eyes?

3 Apr 2020

 Color: Neon Orange

**"not intended for the eye area"**

Under the label there's another label that says "not intended for the eye area" Would be fine it that was clearly stated, not hidden.

5 Apr 2020

 Color: Neon Pink

**Not Intended for Eye Area/Stained Skin**

This product, and the other variations of the neon palette, are not intended for the eye area as specified on the label. I tried to take it off with a make up wipe and washed my face but the product stained my skin and I couldn't get it off. Poor product.

55.    As these and many other complaints highlight, Defendant's Hidden Disclaimer that Neon Obsession is "not intended for the eye area" is not a prominent and conspicuous warning detailing the harmful consequences resulting from the intended use of the Product. Instead, Defendant's Hidden Disclaimer is concealed in the least prominent location possible, primarily because it is impossible to access prior to purchase. And even when revealed, it omits any warning about the potential consequences of using Neon Obsession for its intended purpose.

56.    Neon Obsession is sold in a clear plastic wrapping, which allows visual observation of the entire Product prior to purchase. Instead of placing a prominent and

conspicuous warning about the known dangers of its Product on either the front or back of Neon Obsession's packaging, Defendant covered the entire back panel of the Product with a sticker concealing the Hidden Disclaimer.

57.     Instead of warning users about the Product's dangers, the sticker covering the Hidden Disclaimer includes other information, such as: the invented "pressed pigment palette" product description translated into 18 different languages, the Product's country of origin translated into three different languages, its net weight translated into four different languages, the address of its distribution center translated into five different languages, pictures of four social media platform logos, Defendant's website address, and its various trademarks. Defendant deemed this information more important than informing consumers, that Neon Obsession – a Product marketed and advertised as eyeshadow – was, in fact, not intended for use on the eye area.

58.     Even when revealed, the six-word Hidden Disclaimer is not bolded, underlined, italicized, or otherwise differentiated in any way from the more than three hundred other words surrounding it.

59.     The sticker concealing the Hidden Disclaimer gives no indication there is any safety information underneath. Defendant only included the words "ingredients list continued" with a peel-here logo to deceptively indicate to consumers that this was the only information contained underneath the sticker.

60.     Every consumer who purchased Neon Obsession was injured at the point of sale when, instead of obtaining a reasonably safe product, they obtained Defendant's unreasonably dangerous and defective Product.

61.     By marketing, advertising, selling, and distributing Neon Obsession, Defendant made actionable statements that the Product was free of defects and safe and fit for its ordinary intended use and purpose.

62.     By marketing, advertising, selling, and distributing Neon Obsession to consumers throughout the United States, Defendant made actionable statements that the ordinary use of the Product would not involve undisclosed safety risks. Further,

Defendant concealed what it knew or should have known about the safety risks resulting from the material Defect in its Product.

63. Defendant engaged in the above-described actionable statements, omissions, and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made.

64. Defendant had and has exclusive access to data pertaining to the Product Defect that Plaintiff and Members of the proposed Class could not and did not have.

65. Therefore, Plaintiff, on behalf of herself and those similarly situated, hereby bring this action for violations of various state and federal laws.

## **PLAINTIFF'S EXPERIENCES**

66. Plaintiff Cristie Ramirez purchased Neon Obsession Palette - Neon Orange from www.hudabeauty.com on April 11, 2020.

67. Plaintiff relied on Defendant's representations made in advertisements and online marketing when deciding to purchase and use the Product. Plaintiff follows Huda Kattan on Instagram and remembers watching videos posted of Ms. Kattan using Neon Obsession as eyeshadow before she purchased the Product.

68. After purchasing and using Neon Obsession, Plaintiff suffered from red, itchy, and irritated eyes; a condition that lasted for days. Plaintiff also suffered from stained skin in and around her eye area where Neon Obsession was applied.

69. Plaintiff was not aware of any warnings, safety issues, or instructions for use indicating Neon Obsession was not intended for use around the eyes prior to purchasing or using the Product.

70. Only after suffering injuries caused by her use of Neon Obsession, Plaintiff became aware there was a Hidden Disclaimer underneath a sticker on the back of the Neon Obsession packaging. When Plaintiff attempted to peel off the sticker, both the

1   first and second layer of the sticker lifted off the packaging, and Defendant's Hidden
2   Disclaimer that the Product was not intended for use on the eye area remained
3   inaccessible.

4       71.     Plaintiff discontinued use of Neon Obsession due to the injuries she
5   suffered.

6       72.     Had Plaintiff known of the Defect, she would have either not purchased
7   Neon Obsession or would have paid less than she did. Therefore, she did not receive the
8   benefit of her bargain.

9       73.     On May 8, 2020, Plaintiff provided written notice to Defendant via FedEx
10  of its breach of warranties, violations of various statutes, violations of various common
11  law duties described herein, and requesting corrective actions. As of the date of filing
12  this complaint, Plaintiff's counsel has received no response from Defendant to this
13  notice.

14

15              **CLASS ACTION ALLEGATIONS**

16      74.     Plaintiff brings this action individually and as representative of all those
17  similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined
18  Classes:

19

20      **Nationwide Class**:
        All persons residing in the United States who purchased "Neon
21      Obsession Palette – Neon Green," "Neon Obsession Palette – Neon
22      Pink," or "Neon Obsession Palette – Neon Orange" during the
        maximum period permitted by law.
23

24
        **California Class**:
25      All persons residing in the State of California who purchased "Neon
26      Obsession Palette – Neon Green," "Neon Obsession Palette – Neon
        Pink," or "Neon Obsession Palette – Neon Orange" during the
27      maximum period permitted by law.

28

75.     Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

76.     Plaintiff seeks only damages and equitable relief on behalf of herself and the putative Classes. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiff and/or putative Class Members.

77.     <u>Numerosity</u>: The Members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of tens of thousands of people geographically disbursed throughout California. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Classes are readily identifiable from information and records in the possession of Defendant and its authorized retailers.

78.     <u>Typicality</u>: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, purchased Neon Obsession that was designed, formulated, manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that, *inter alia*, she has incurred or will continue to incur damage as a result of overpaying for a Product with a Defect that makes the Neon Obsession inherently dangerous and not fit for its intended use. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

79.   <u>Commonality</u>: Common questions of law and fact exist as to all Members of the Classes. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, *inter alia*:

(a)   Whether Neon Obsession is defective;

(b)   Whether Neon Obsession is defectively designed and/or manufactured;

(c)   Whether Neon Obsession is dangerous;

(d)   Whether Defendant knew or reasonably should have known about the Defect prior to distributing and selling Neon Obsession to Plaintiff and the Classes;

(e)   Whether Defendant knew or reasonably should have known Neon Obsession was dangerous when used on the eye area when it packaged, marketed, advertised, specified, instructed, encouraged, and otherwise represented that it was intended for use on the eye area;

(f)   Whether Defendant concealed from and/or failed to disclose to Plaintiff and the Classes the dangers associated with Neon Obsession;

(g)   Whether Defendant breached the implied warranty of merchantability and the Song-Beverly Consumer Warranty Act, relating to Neon Obsession;

(h)   Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Neon Obsession products.

(i)   Whether Defendant violated Cal. Bus. & Prof. Code § 17500, *et seq.* (FAL);

(j)   Whether Defendant violated Civil Code §§ 1750, *et seq.* (CLRA);

(k)   Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL);

(l)   Whether Defendant was negligent in its failure to adequately test;

(m)  Whether Defendant was negligent in its failure to warn;

23

(n)   Whether Defendant is strictly liable for its defective design and/or manufacture of Neon Obsession;

(o)   Whether Plaintiff and the Classes are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(p)   Whether Defendant should be enjoined from selling and marketing its defective Neon Obsession Products; and

(q)   Other issues which may be revealed in discovery.

80.   <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

81.   <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Defendant has acted and refused to act on grounds that apply generally to the Classes, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

82.   <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members

will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

83.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

84.    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes appropriate.

## **FIRST CLAIM FOR RELIEF**

### **Breach of Implied Warranties and**
### **Song-Beverly Consumer Warranty Act California Civil Code § 1790, *et seq.***
### **(Plaintiff Individually and on Behalf of the Nationwide Class)**

85.    Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 raised in the preceding paragraphs into this cause of action and claim for relief as if fully set forth herein.

86.    Plaintiff brings this cause of action against Defendant individually and on behalf of the Nationwide Class.

87.    As described above, Plaintiff has standing to pursue this claim because she has suffered injury-in-fact and has lost money or property as a result of Defendant's conduct.

88.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of Neon Obsession. Defendant knew or had reason to know of

the specific use for which Neon Obsession was purchased, including that Neon Obsession was marketed, advertised, and sold to be used on the eye area.

89.    By placing the Product into the stream of commerce, Defendant provided Plaintiff and Nationwide Class Members with implied warranties that Neon Obsession was merchantable and fit for the ordinary purposes for which it was sold.

90.    However, Neon Obsession is not fit for its ordinary purpose of being used on the eye area because, *inter alia*, Neon Obsession contained a Defect causing it to become unreasonably dangerous and unsuitable for its intended use.

91.    The problems associated with the Defect, such as staining of the skin and irritation of the eyes and surrounding area lasting many days, prevent Neon Obsession from being safely used for its intended purpose, and thus constitutes a breach of the implied warranty of merchantability. These problems are caused by Defendant's failure to adequately warn Plaintiff and consumers of the Defect and that Neon Obsession is not safe to use on the eye area without significant risk of injury.

92.    The Defect was undiscoverable by Plaintiff and Nationwide Class Members at the time that they purchased Neon Obsession.

93.    Defendant impliedly warranted that Neon Obsession was of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that Neon Obsession manufactured, supplied, distributed, and/or sold by Defendant was safe and reliable for use as eyeshadow; and (ii) a warranty that Neon Obsession would be fit for its intended use.

26

94.    Contrary to the applicable implied warranties, Neon Obsession, at the time of sale and thereafter, was not fit for its ordinary and intended purpose of providing Plaintiff and Nationwide Class Members with a safe cosmetic product. Instead, Neon Obsession suffers from a defective design and/or defective manufacturing, as alleged herein.

95.   Defendant's actions, as complained of herein, breached the implied warranties that Neon Obsession was of merchantable quality and fit for such use in violation of Cal. Civ. Code §§ 1791.1 and 1792.

96.   Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and the Nationwide Class, not third-party retailers, resellers or distributors who sold the Product. Moreover, Defendant exercises substantial control over which outlets can carry and sell its Product, which are the same places that Plaintiff and Nationwide Class Members purchased Neon Obsession. In addition, Defendant's warranties are in no way designed to apply to the third-party retailers, resellers or distributors who purchase the Product in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchase Neon Obsession.

97.   Plaintiff and Nationwide Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Product that they would not have otherwise paid. Plaintiff and the Nationwide Class also did not

receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the Defect.

98. Defendant's conduct described in this complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia:

> Ala. Code § 7-2-314, *et seq.*; Alaska Stat. § 45.02.314, *et seq.*; Ariz. Rev. Stat. § 47-2314, *et seq.*; Ark. Code § 4-2-314, *et seq.*; Cal. Com. Code § 2314, *et seq.*; Colo. Rev. Stat. § 4-2-314, *et seq.*; Conn. Gen. Stat. § 42a-2-314, *et seq.*; 6 Del. C. § 2-314, *et seq.*; D.C. Code § 28:2-314, *et seq.*; Fla. Code § 672.314, *et seq.*; O.C.G.A. § 11-2-314, *et seq.*; Haw. Rev. Stat. § 490:2-314, *et seq.*; Idaho Code § 28-2-314, *et seq.*; 810 Ill. Comp. Stat. 5/2-314, *et seq.*; Ind. Code § 26-1-2-314, *et seq.*; Iowa Code § 554.2314, *et seq.*; Kan. Stat. § 84-2-314, *et seq.*; Ky. Rev. Stat. § 355.2-314, *et seq.*; La. Rev. Stat § 9:2800.53(6), *et seq.*; 11 M.R.S.A. § 2-314, *et seq.*; Md. Code Ann., Com. Law § 2-314, *et seq.*; Mass. Code 106, § 2-314, *et seq.*; Mich. Comp. Laws 440.2314, *et seq.*; Minn. Stat. § 336.2-314, *et seq.*; Miss. Code § 75-2-314, *et seq.*; Mo. Rev. Stat. § 400.2-314, *et seq.*; Mont. Code § 30-2-314, *et seq.*; Neb. U.C.C. § 2-314, *et seq.*; Nev. Rev. Stat. § 104.2314, *et seq.*; N.H. Rev. Stat. § 382-A:2-314, *et seq.*; N.J. Stat. § 12A:2-314, *et seq.*; N.M. Stat. § 55-2-314, *et seq.*; N.Y. U.C.C. § 2-314, *et seq.*; N.C. Gen. Stat. § 25-2-314, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; Ohio Rev. Code § 1302.26, *et seq.*; Okla. Stat. Tit. 12A, § 2-314, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; 13 Pa. Cons. Stat. § 2314, *et seq.*; R.I. Gen. Laws § 6A-2-314, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2- 314, *et seq.*; V.T.C.A., Bus. & C. § 2.314, *et seq.*; Utah Code § 70A-2-314, *et seq.*; Vt. Stat. Tit. 9A, § 2-314, *et seq.*; Va. Code § 8.2-314, *et seq.*; Wash. Rev. Code § 62A.2-314, *et seq.*; W. Va. Code § 46-2-314, *et seq.*; Wis. Stat. § 402.314, *et seq.*; and Wyo. Stat. § 34.1-2-314, *et seq.*

99.   Plaintiff and the Nationwide Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

100. As a result of the breach of the implied warranty of merchantability, Plaintiff and Nationwide Class Members are entitled to legal and equitable relief, including injunctive relief, damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## SECOND CLAIM FOR RELIEF

### (IN THE ALTERNATIVE)
**Unjust Enrichment**
**(Plaintiff Individually and on Behalf of the Nationwide Class)**

101.   Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 into this cause of action and claim for relief as if fully set forth herein.

102.   This alternative claim is asserted on behalf of Plaintiff and Nationwide Class Members to the extent there is any determination that any warranties extended to Plaintiff and Nationwide Class Members by Defendant do not govern the subject matter of the disputes with Defendant, or that Plaintiff does not have standing to assert such claims against Defendant.

103. Plaintiff and Nationwide Class Members conferred a monetary benefit on Defendant, and Defendant had knowledge of this benefit. The retail price for each Neon Obsession product listed online is $29.00 or more.

104. By its wrongful acts and omissions described herein, including selling the defective cosmetic Product, Defendant was unjustly enriched at the expense of Plaintiff and Nationwide Class Members.

105. Plaintiff and Nationwide Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged herein.

106. Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Nationwide Class Members under circumstances in which it would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Neon Obsession.

107. Plaintiff and Nationwide Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Product on the same terms or for the same price had they known that the Product contained a Defect.

108. Defendant either knew or should have known that payments rendered by Plaintiff and Nationwide Class Members were given and received with the expectation that Neon Obsession was free of defects and was capable of providing the benefits

CLASS ACTION COMPLAINT

represented by Defendant in the labeling, marketing, and advertising of the Product. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

109.   Plaintiff and Nationwide Class Members seek restitution from Defendant and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and establishing a constructive trust from which Plaintiff and Nationwide Class Members may seek restitution.

110.   When required, Plaintiff and Nationwide Class Members are in privity with Defendant because Defendant's sale of the Product was either direct or through authorized third-party retailers and resellers. Purchase through authorized retailer and resellers is sufficient to create such privity because such authorized third parties are Defendant's agents for the purpose of the sale of the Product.

111.   As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Nationwide Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRD CLAIM FOR RELIEF

**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, *et seq.***
**(Plaintiff Individually and on Behalf of the California Class)**

112.    Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 into this cause of action and claim for relief as if fully set forth herein.

113.  Plaintiff brings this cause of action against Defendant individually and on behalf of the California Class.

114.    The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

115.    California Business and Professions Code § 17500 prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase products.

116.    Defendant, when it marketed, advertised and sold Neon Obsession, represented to Plaintiff and California Class Members that Neon Obsession was free of defects and safe, despite the fact that Neon Obsession was defective, not safe, and prone to failure.

117.    At the time of its misrepresentations, Defendant was either aware that Neon Obsession was defective and not safe, or was aware that it lacked the information and/or knowledge required to make such a representation truthfully. Defendant

32

concealed and omitted and failed to disclose this information to Plaintiff and California Class Members.

118.     Defendant's descriptions of Neon Obsession were false, misleading, and likely to deceive Plaintiff and other reasonable consumers.

119.     Defendant's conduct therefore constitutes deceptive or misleading advertising.

120.     Plaintiff has standing to pursue claims under the FAL as they reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials regarding Neon Obsession, when selecting and purchasing Neon Obsession.

121.     In reliance on the statements made in Defendant's advertising and marketing materials and Defendant's omissions and concealment of material facts regarding the quality and use of Neon Obsession, Plaintiff and California Class Members purchased Neon Obsession.

122.     Had Defendant disclosed the true defective nature of Neon Obsession, Plaintiff and California Class Members would not have purchased Neon Obsession or would have paid substantially less for it.

123.     As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and California Class Members who paid for Neon Obsession, which contained a Defect.

124.     Plaintiff and California Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant and by means of its deceptive or misleading representations, including monies already obtained from Plaintiff and California Class Members as provided for by the California Business and Professions Code § 17500.

## FOURTH CLAIM FOR RELIEF

### Violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*
### (Plaintiff Individually and on Behalf of the California Class)

125.   Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 into this cause of action and claim for relief as if fully set forth herein.

126.   Plaintiff brings this cause of action against Defendant individually and on behalf of the California Class.

127.   The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

128.   The CLRA applies to all claims of all California Class Members because the conduct which constitutes violations of the CLRA by Defendant occurred within the State of California.

129.   Plaintiff and California Class Members are "consumers" as defined by Civil Code § 1761(d).

130. Defendant is a "person" as defined by Civil Code § 1761(c).

131. Neon Obsession qualifies as "goods" as defined by Civil Code § 1761(a).

132. Plaintiff and the California Class Members' purchases of Neon Obsession are "transactions" as defined by Civil Code 25 § 1761(e).

133. As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful.

   (a)  "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5); and

   (b)  "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

134. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5) and (a)(7) when it represented, through its advertising and other express representations, that Neon Obsession had benefits or characteristics that it did not actually have.

135. As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA, and has made representations regarding Neon Obsession's benefits or characteristics that it did not in fact have, and represented Neon Obsession to be of a quality that was not true. Indeed, Defendant concealed this information from Plaintiff and California Class Members.

136.   Neon Obsession was not and is not "reliable," in that the Product is not safe and is of inferior quality and trustworthiness compared to other products in the industry. As detailed above, Defendant further violated the CLRA when it falsely represented that Neon Obsession meets a certain standard or quality.

137.   As detailed above, Defendant violated the CLRA when it advertised Neon Obsession with the intent not to sell the Product as advertised and knew that Neon Obsession was not as represented.

138.   Defendant's deceptive practices were specifically designed to induce Plaintiff and California Class Members to purchase or otherwise acquire Neon Obsession.

139.   Defendant engaged in uniform marketing efforts to reach California Class Members, their agents, and/or third parties upon whom they relied, to persuade them to purchase and use Neon Obsession manufactured by Defendant. Defendant's packaging, advertising, marketing, website and retailer product identification and specifications, contain numerous false and misleading statements regarding the quality, safety, and reliability of Neon Obsession. These include, *inter alia*, the following misrepresentations contained in its advertising, marketing, social media platforms, "HOW TO USE" instructions, and website:

- "With these bright neon colors, you can't really go wrong with a simple monochromatic color wash on the lids."

- "One of my favorites is a super-simple, graphic neon liner look."

- "I start from the inside and shape the wing as I move away from the eye."

- "Huda's tip: Apply Overachiever concealer in shade Whipped Cream as a base to amplify pigment and intensity your looks."

- "Blend the shadows seamlessly together, using darker shades in the crease, and lighter hues along the brow bone and inner corners of the eye."

- "Use a smudge or liner brush, to create bright liner looks either on the eye lid, or along lower lash line."

- Statement in the form of images of models wearing neon eyeshadow corresponding to the Neon Obsession color palette immediately adjacent to Neon Obsession products and related information.

- Statements in the form of instructional videos teaching and encouraging consumers to use Neon Obsession around the eyes.

140. Despite these representations, Defendant also omitted and concealed information and material facts from Plaintiff and California Class Members.

141. In their purchase of Neon Obsession, Plaintiff and California Class Members relied on Defendant's representations and omissions of material facts.

142. These business practices are misleading and/or likely to mislead consumers and should be enjoined.

143. On May 8, 2020, Plaintiff provided written notice to Defendant via FedEx demanding corrective actions pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, *et seq*. Plaintiff will amend her complaint to add claims for monetary damages if Defendant fails to take the corrective actions.

144.   Plaintiff's declaration stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as Exhibit A.

145.   In accordance with Civil Code § 1780(a), Plaintiff and the other California Class Members seek injunctive and equitable relief for Defendant's violations of the CLRA, including an injunction to enjoin Defendant from continuing its deceptive advertising and sales practices.

146.   Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiff seeks an order enjoining Defendant from the unlawful practices described above, a declaration that Defendant's conduct violates the Consumers Legal Remedies Act, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

## FIFTH CLAIM OF ACTION

**Violations of The California Unfair Competition Law
("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*
(Plaintiff Individually and on Behalf of the California Class)**

147.   Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 into this cause of action and claim for relief as if fully set forth herein.

148.   Plaintiff brings this cause of action against Defendant individually and on behalf of the California Class.

149.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

150.  Plaintiff and California Class Members who purchased Defendant's Neon Obsession suffered an injury by virtue of buying defective cosmetic products in which Defendant misrepresented and/or omitted Neon Obsession's true quality, reliability, safety, and use. Had Plaintiff and California Class Members known that Defendant materially misrepresented Neon Obsession and/or omitted material information regarding its defective Neon Obsession products and its safety, which leads to skin and eye injuries, they would not have purchased Neon Obsession.

151.  Defendant's conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in the preceding paragraphs of this complaint.

152.  There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise its Neon Obsession products.

153.  Plaintiff and California Class Members who purchased Defendant's Product had no way of reasonably knowing that Neon Obsession was deceptively packaged, marketed, advertised, and labeled, was defective, not safe, and unsuitable for its intended use. Thus, Plaintiff and California Class Members could not have reasonably avoided the harm they suffered.

154.  The gravity of the harm suffered by Plaintiff and California Class Members who purchased Defendant's Neon Obsession outweighs any legitimate justification, motive or reason for packaging, marketing, advertising, and labeling the defective Neon Obsession in a deceptive and misleading manner. Accordingly,

Defendant's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and are substantially injurious to Plaintiff and California Class Members.

155. The above acts of Defendant in disseminating said misleading and deceptive statements to consumers throughout the State of California, including to Plaintiff and California Class Members, were and are likely to deceive reasonable consumers by obfuscating the true defective nature of Defendant's Neon Obsession, and thus were violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

156. As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

157. Mislabeled cosmetics cannot legally be manufactured, held, advertised, distributed, or sold. Thus, mislabeled cosmetics have no economic value and are worthless as a matter of law, and purchasers of mislabeled cosmetics are entitled to a restitution refund of the purchase price of the mislabeled cosmetics.

# SIXTH CLAIM OF ACTION

### Negligence – Failure to Test
### (Plaintiff Individually and on Behalf of the Nationwide Class)

158.   Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 into this cause of action and claim for relief as if fully set forth herein.

159.   Plaintiff brings this cause of action against Defendant individually and on behalf of the Nationwide Class.

160.   Defendant failed to perform adequate testing of Neon Obsession, including testing of Neon Obsession around the eye area, which was defectively designed, constructed, tested, manufactured, inspected, distributed, labeled, marketed, advertised, and/or sold to Plaintiff and the Class.

161.   If Defendant had performed adequate testing, it would have revealed the serious deficiencies within Defendant's Neon Obsession, including that use around the eye would lead to the unreasonably dangerous conditions described herein.

162.   At all relevant times, Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—its Neon Obsession prior to placing it in the stream of commerce.

163.   Defendant breached its duty by failing to exercise ordinary care in the design and testing of its Neon Obsession, which it introduced into the stream of

commerce, because Defendant knew or reasonably should have known that its Neon Obsession could cause – and does cause – injury when used as intended.

164.   Defendant knew or reasonably should have known that Nationwide Class Members, including Plaintiff, would suffer economic damages or injury and/or be at an increased risk of suffering damage and injury, as a result of Defendant's failure to exercise ordinary care in the design and manufacturing of its Neon Obsession by failing to conduct appropriate testing.

165.   As a result of Defendants' above-described conduct, Plaintiff and the Nationwide Class experienced and/or are at risk of experiencing financial damage and injury.

166.   As a direct and proximate result of Defendant's failure to test Neon Obsession that it designed, constructed, manufactured, inspected, distributed, marketed, advertised, warranted, and/or sold, Plaintiff and Nationwide Class Members have suffered damages, as described above.

## **SEVENTH CLAIM OF ACTION**

### **Negligence – Failure to Warn**
### **(Plaintiff Individually and on Behalf of the Nationwide Class)**

167. Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 into this cause of action and claim for relief as if fully set forth herein.

168.  Plaintiff brings this cause of action against Defendant individually and on behalf of the Nationwide Class.

169.  At all relevant times, Defendant was responsible for formulating, designing, constructing, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling Neon Obsession to Plaintiff and the Nationwide Class. At all relevant times, it was reasonably foreseeable by Defendant that the use of Neon Obsession in its intended manner involved a substantial risk of injury and was unreasonably dangerous to Plaintiff and the Nationwide Class as the ultimate users of Neon Obsession.

170.  At all relevant times, Defendant knew or had reason to know of the risk of injury and the resultant harm that Neon Obsession posed to Plaintiff and Nationwide Class Members, as the Defect within Neon Obsession existed at the time of its design, construction, manufacture, inspection, distribution, labeling, marketing, advertising, and/or sale, as described herein.

171.  Defendant, as the designer, manufacturer, tester, distributor, marketer, advertiser, and/or seller of Neon Obsession, had a duty to warn Plaintiff and the Nationwide Class of all dangers associated with the intended use of Neon Obsession.

172.  At minimum, the duty arose for Defendant to warn consumers that use of Neon Obsession could result in injury and become unreasonably dangerous, based, in part, on internal testing, FDA regulations, and consumer complaints.

CLASS ACTION COMPLAINT

173. Defendant was negligent and breached its duty of care by negligently failing to provide adequate warnings to purchasers and users of Neon Obsession, including Plaintiff and the Nationwide Class, regarding the Defect, risks, and potential dangers of Neon Obsession.

174. Defendant was negligent and breached its duty of care by concealing its insufficient Hidden Disclaimer under a sticker, making it impossible for Plaintiff and the Nationwide Class to view the instruction before purchasing Neon Obsession, and failing to include any information regarding the risks and resulting injuries, potential dangers, and defective condition of the Product.

175. Defendant was negligent and breached its duty of care by concealing the risks of and failing to warn consumers that the Product contains ingredients not approved by the FDA for its foreseeable and intended purpose.

176. Defendant knew, or through the exercise of reasonable care, should have known of the inherent Defect and resulting dangers associated with using Neon Obsession as described herein, and knew that Plaintiff and Nationwide Class Members could not reasonably be aware of those risks. Defendants failed to exercise reasonable care in providing Plaintiff and the Nationwide Class with adequate warnings.

177. As a direct and proximate result of Defendant's failure to adequately warn consumers that the use of Neon Obsession, including its intended use, could cause and has caused injuries and other damages, Plaintiff and the Nationwide Class have suffered damages, as described herein.

44

## EIGHTH CLAIM OF ACTION

### Strict Products Liability – Defective Design & Manufacture
### (Plaintiff Individually and on Behalf of the Nationwide Class)

178.     Plaintiff hereby re-alleges and incorporates all factual allegations in paragraphs 1 through 83 into this cause of action and claim for relief if fully set forth herein.

179.     Neon Obsession was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendant.

180.     Plaintiff brings this cause of action against Defendant individually and on behalf of the Nationwide Class.

181.     When the Product left the control of Defendant, Neon Obsession was expected to and did reach Plaintiff and Nationwide Class Members without substantial change from the condition in which it left Defendant's control.

182.     Neon Obsession was defective when it left Defendant's control and was placed in the stream of commerce, in that there were foreseeable defects in the design and/or manufacture of the Product, as well as use and care warnings.

183.     Combined with the use and care instructions and the lack of appropriate warnings, Neon Obsession was in an unreasonably dangerous condition at the time it left Defendant's control and was placed in the stream of commerce, where it was purchased by Plaintiff and Nationwide Class Members.

184.    Neon Obsession was unfit for its intended use, and was sold in a defective condition that caused it to become unreasonably dangerous and unsuitable for its intended use.

185.    Plaintiff and the Nationwide Class Members used Neon Obsession in substantially the same condition it was in when it left the control of Defendant and in the manner for which Neon Obsession was intended.

186.    Had Defendant altered its design and manufacturing process utilizing viable alternatives described *supra*, and in other ways to be discovered, Neon Obsession would not cause the injuries alleged.

187.    Better and safer methods of design, manufacturing and packaging of Neon Obsession were available and utilized by other manufacturers in the same industry.

188.    Likewise, alternate warnings were available to reduce the likelihood of personal injury and other damage.

189.    As a direct and proximate result of Defendant's defective design and/or manufacture of Neon Obsession, Plaintiff and Nationwide Class Members suffered damages and economic loss as set forth herein.

190.    Defendant is strictly liable to Plaintiff and Nationwide Class Members for all damages and economic losses resulting from its defective design and/or manufacture of Neon Obsession.

CLASS ACTION COMPLAINT

191.   As a direct and proximate result of the foregoing, Plaintiff and the Nationwide Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

a.      For an order certifying the Classes under Fed. Civ. P. 23 and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel;

b.      For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pled or as the Court may deem proper; and

h.      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

CLASS ACTION COMPLAINT

1

DATED: May 12, 2020.          Respectfully submitted,

2

*/s/ Alex R. Straus*_____

3

Alex R. Straus (CA Bar No. 321366)

4

**WHITFIELD BRYSON LPP**

16748 McCormick Street

5

Los Angeles, CA 91436

6

T: 917-471-1894

alex@whitfieldbryson.com

7

8

William A. Ladnier (CA Bar No. 330334)

Jonathan B. Cohen*

9

**GREG COLEMAN LAW PC**

10

First Tennessee Plaza

800 S. Gay Street, Suite 1100

11

Knoxville, TN 37929

12

T: 865-247-0080

F: 865-522-0049

13

will@gregcolemanlaw.com

14

jonathan@gregcolemanlaw.com

15

***Counsel for Plaintiffs and The Class***

16

*\* Pro Hac Vice Application to be submitted*

17

18

19

20

21

22

23

24

25

26

27

28