**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Alex R. Straus (SBN 321366)
astraus@milberg.com
280 S. Beverly Drive
Beverly Hills, CA 90212
(917) 471-1894 (phone)
(615) 921-6501 (fax)

*Attorneys for Plaintiff Ramirez and the
Proposed Settlement Class*

*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTIE RAMIREZ and NATALIE LINARTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HB USA HOLDINGS INC. dba HUDA BEAUTY, and DOES 1-10, Inclusive,<br><br>Defendants. | CASE NO. 5:20-cv-01016-JGB-SHK<br><br>CLASS ACTION<br><br>**PLAINTIFF RAMIREZ'S MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**<br><br>Judge: Hon. Jesus G. Bernal<br><br>Hearing Date: March 21, 2022<br>Time: 9:00 a.m.<br>Crtm: 1 |

# **TABLE OF CONTENTS**

I.      **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

II.     **RELEVANT FACTS AND PROCEDURAL HISTORY**. . . . . . . . . . . . .  8

III.    **AUTHORITY AND ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

        A. Ramirez Counsel's requested fees are reasonable. . . . . . . . . . . . . . . . . . . 11

                1.      Ramirez Counsel's Hours. . . . . . . . . . . . . . . . . . . . . . . . . . 12

                2.      Ramirez Counsel's Rates . . . . . . . . . . . . . . . . . . . . . . . . . . .13

                3.      Ramirez Counsel's Requested Multiplier. . . . . . . . . . . . . . . .15

                        a.  The Time and Labor Required . . . . . . . . . . . . . . . . . . . . . . .16

                        b.  The Novelty and Difficulty of the Factual and Legal

                            Questions Involved and the Skill Required to

                            Perform the Legal Service Properly. . . . . . . . . . . . . .17

                        c.  The Preclusion of Other Employment by the Attorneys

                            Due to Acceptance of the Case, the Customary

                            Fee, Whether the Fee is Fixed or Contingent, Time

                            Limitations Imposed by the Client or the

                            Circumstances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                        d.  The Amount Involved and the Results Obtained. . . . . . . . .20

                        e.  The Experience, Reputation and the Ability of Attorneys,

                            the 'Undesirability' of the Case, the Nature and

                            Length of the Professional Relationship with the

                            Client. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

                        f.  Awards in Similar Cases. . . . . . . . . . . . . . . . . . . . . . . . . 24

                        g.  Reaction of the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        B. Ramirez Counsel litigation costs were necessarily and reasonably

           Incurred. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IV.     **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. GT Drywall*
    No. EDMC170006JGBKKX, 2018 WL 1041412, at *2
     (C.D. Cal. Jan. 22, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 14

*Bayat v. Bank of the West*
    No. C-13-2376 EMC, 2015 WL 1744342, at *9 (N.D. Cal. Apr. 15, 2015). . . . 25

*Bower v. Cycle Gear, Inc.*
    No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) . 20

*Browne v. Am. Honda Motor Co., Inc.*
    No. 09-cv-06750 MMM, 2010 WL 9499073, at *11 (C.D. Cal. Oct. 5, 2010) . .25

*Buccellato v. AT & T Operations, Inc.*
    No. CV 10–00463 LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) . .25

*Camacho v. Bridgeport Fin., Inc.*
    523 F.3d 973, 979–80 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Carter v. San Pasqual Fiduciary Tr. Co.*
    No. SACV151507JVSJCGX, 2018 WL 6174767, at *25
    (C.D. Cal. Feb. 28, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 26

*Create-A-Card, Inc. v. INTUIT, Inc.*
    No. CV-07-6452-WHA, 2009 U.S. Dist. LEXIS 93989
    (N.D. Cal. Sept. 22, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Dickey v. Advanced Micro Devices, Inc.*
    No. 15-cv-04922-HSG, 2020 WL 870928, at *9 (N.D. Cal. Feb. 21, 2020) . . . .28

*Fischel v. Equitable Life Assurance Soc'y*
    307 F.3d 997, 1006 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Guschausky v. Am. Family Life Assur. Co.*
    851 F. Supp. 2d 1252, 1259 (D. Mont. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Harris v. Vector Mktg. Corp.*
    2012 U.S. Dist. LEXIS 1379 (N.D. Cal. Feb. 6, 2012) . . . . . . . . . . . . . . . . . . 23

*Hensley v. Eckerhart*
    461 U.S. 424, 433 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Hill v. Canidae Corp.*
    No. 5:20-cv-01374-JGB-SP (C.D. Cal. Sept. 28, 2021) (ECF No. 79) . . . . . . . .24

-2-

*Hopkins v. Stryker Sales Corp.*
        No. 11-CV-02786-LHK, 2013 WL 496358, *4 (N.D. Cal. Feb. 6, 2013) ....15, 24

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*
        No. 09 MDL 2007, 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014) . . . . .  13

*In re Capacitors Antitrust Litig.*
        No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) . .27

*In re Coord. Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*
        109 F.3d 602, 607 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*In re Heritage Bond Litig.*
        No. 02-ML1475-DT(RCX), 2005 WL 1594389, at *12
        (C.D. Cal. June 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 26

*In re Hyundai & Kia Fuel Econ. Litig.*
        26 F.3d 539, 563 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*In re MagSafe Apple Power Adapter Litig.*
        5:091-cv-01911-EJD, 2015 WL 428105 (N.D. Cal., Jan. 30, 2015) . . . . . . . . . 22

*In re Omnivision Techs., Inc*
        559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . 19, 20, 26

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*
        No. 2672 CRB (JSC), 2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017) . . . . 25

*In re TJX Cos. Retail Sec. Breach Litg.*
        584 F.Supp.2d 395, 405 (D. Mass. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
        No. 16-MD-02752-LHK, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) .27

*Johnson v. Gen. Mills, Inc.*
        No. SACV 10-00061-CJC, 2013 WL 3213832, at *3
        (C.D. Cal. June 17, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kakani v. Oracle Corp.*
        No. 06-06493WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 1, 2007) . . . . . . 19

*Kerr v. Screen Extras Guild, Inc*
        526 F.2d 67, 70 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kumar v. Salov N. Am. Corp*
        No. 14-CV-2411- YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) . . . . . . . . 21

*Lemus v. H&R Block Enters. LLC*
        2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012) . . . . . . . . . . . . . . . .23

-3-

*Lerma v. Schiff Nutrition Int'l, Inc.*
    No. 11CV1056-MDD, 2015 WL 11216701 (S.D. Cal. Nov. 3, 2015) . . . . . . . . 21
*Lofton v. Verizon Wireless LLC*
    No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) . . . 18
*Marty v. AnheuserBusch Cos.*
    No. 13-CV-23656-JJO, 2015 WL 10858371, at *2 (S.D. Fla. Oct. 22, 2015) . . 21
*McGrath v. Cty. of Nev*
    67 F.3d 248, 252 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Morales v. Stevco, Inc.*
    2012 U.S. Dist. LEXIS 68640 (E.D. Cal. May 16, 2012) . . . . . . . . . . . . . . . . . 23
*Moreyra v. Fresenius Med. Care Holdings, Inc.*
    No. SACV-10-517 JVS (RZx), 2013 WL 12248139, at *3
    (C.D. Cal. Aug. 7, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Parkinson v. Hyundai Motor Am.*
    796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 25
*Pelletz v. Weyerhaeuser Co.*
    255 F.R.D. 537, 544 (W.D. Wash. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
*Perfect 10, Inc. v. Giganews, Inc*
    2015 WL 1746484, at *15, *19 (C.D. Cal. Mar. 24, 2014) . . . . . . . . . . . . . . . . 14
*Perkins v. Linkedin Corp*
    No. 13-cv-04303-LHK, 2016 WL 613255, at *2 (N.D. Cal. Feb. 16, 2016) . . . 13
*Retta v. Millennium Prod., Inc.*
    No. CV15-1801 PSG AJWX, 2017 WL 5479637
    (C.D. Cal. Aug. 22, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26
*Roberti v. OSI Sys., Inc*
    No. CV13-09174 MWF (MRWx), 2015 WL 8329916, at *6
    (C.D. Cal. Dec. 8, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Schneider v. Chipotle Mexican Grill, Inc.*
    336 F.R.D. 588 (N.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*Schwarz v. Sec'y of Health & Human Servs.*
    73 F.3d 895, 906 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Shames v. Hertz Corp.*
    No. 07-CV-2174-MMA (WMC), 2012 U.S. Dist. LEXIS 158577, *31-32
    (S.D. Cal. Nov. 5, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Spann v. J.C. Penney Corp.*
    211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
*Staton v. Boeing Co.*
    327 F.3d 938, 963 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Steiner v. Am. Broad. Co.*
    248 Fed. Appx. 780, 783 (9th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
*Sylvester v. CIGNA Corp.*
    369 F. Supp. 2d 34, 52 (D. Me. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*Tait v. BSH Home Appliances Corp.*
    No. SACV 10-0711-DOC (ANx), 2015 WL 4537463
    (C.D. Cal. July 27, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Theodore Broomsfield v. Craft Brew All, Inc.
    No. 17-CV-01027-BLF, 2020 WL 1972505, at *9
    (N.D. Cal Feb. 5, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25
*Uriarte-Limon v. Hundley*
    No. EDCV20640JGBSPX, 2020 WL 7315085, at *6
    (C.D. Cal. Oct. 30, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Van Skike v. Dir., Office of Workers' Comp. Programs*
      557 F.3d 1041, 1046 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Van Vranken v. Alt. Richfield Co.*
    901 F. Supp. 294, 298 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
*Vargas v. Ford Motor Co.*
    No. CV-12-08388-AB, 2017 U.S. Dist. LEXIS 177149, *8
    (C.D. Cal. Oct. 18, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043, 1051 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 20, 24
*WB Music Corp. v. Royce Int'l Broad. Corp.*
    No. EDCV16600JGBDTBX, 2018 WL 6177237 (C.D. Cal. July 9, 2018) . . . .14
*Wershba v. Apple Computer, Inc.*
    91 Cal. App. 4th 244, 255 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25
*Winters v. Two Towns Ciderhouse, Inc.*
    No. 20-CV-00468-BAS-BGS, 2021 WL 1889734
    (S.D. Cal. May 11, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 26

**PLAINTIFF RAMIREZ'S MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's August 13, 2021, Order Granting Preliminary Approval of Class Action Settlement, ECF No. 50, ("Preliminary Approval Order"), Plaintiff Cristie Ramirez ("Plaintiff Ramirez") files this Motion for an award of attorneys' fees and expenses (the "Motion").

Plaintiff Ramirez seeks an order awarding her counsel, Milberg Coleman Bryson Phillips Grossman, PLLC ("Ramirez Counsel"),[1] attorneys' fees and expenses in the amount of $716,240.00 to be paid directly by Defendant HB USA Holdings Inc. ("Defendant" or "Huda Beauty") in accord with the preliminarily approved Settlement Agreement. The requested attorneys' fees will not impact the Settlement Benefits available to Class Members and equate to approximately 14.7% of the value of the Benefits made available to the Class via the Settlement, which are valued at $4,886,112.00 ($4,341,112.00 in Product sales, plus at least $545,000.00 for settlement notice and administration, exclusive of actual postage and check processing costs). Straus Decl. ¶ 4. Further, the requested amount equates to approximately 25% of the total value of the Class Members' claims that have been submitted to the Settlement Administrator in the amount of $2,853,732.00 as of December 12, 2021.[2]  In support of this Motion, Plaintiff Ramirez respectfully submits the following:

_____

[1] Ramirez Counsel are currently all members of Milberg Coleman Bryson Phillips Grossman, PLLC ("MCBPG") as the result of a multi-firm merger effectuated in or about June 2021. However, at the time this action was filed, May 12, 2020, through approximately June 23, 2021, Ramirez Counsel were members of two separate and distinct law firms: Greg Coleman Law, PC ("GCL") and Whitfield Bryson, LLP ("WB"). MCBPG, GCL, and WB firm resumes, attached hereto as **Exhibits A, B,** and **C**, respectively.

[2] The claims period does not end until January 12, 2022, and the Settlement Administrator continues to receive and process claims. Therefore, the 25% calculation of Ramirez Counsel's requested fee as a percentage of the claims submitted will likely decrease to reflect a lower

(Continued...)

## I.    INTRODUCTION

Huda Beauty is a manufacturer of cosmetics. Between 2019 and July 2020, Defendant sold three eyeshadow palettes under the brand name Huda Beauty called "Neon Obsession Palette – Neon Green," "Neon Obsession Palette – Neon Pink," and "Neon Obsession Palette – Neon Orange" (collectively, the "Products"). After conducting extensive product research and consumer investigations of the Products, Plaintiff Ramirez sent a demand letter to Huda Beauty in accord with the Consumer Legal Remedies Act ("CLRA") on May 10, 2020, and subsequently filed her class action lawsuit on May 12, 2020, alleging misrepresentations and omissions of material information in the advertising, marketing, and labeling of the Products.  Plaintiff Ramirez brought this class action lawsuit to remedy the harm resulting from Defendant's representations that its Products sold during the Class Period were safe for their intended use as eyeshadow.

As discussed below, more than five months after Plaintiff Ramirez filed and began litigating this case, Plaintiff Natalie Linarte ("Plaintiff Linarte") filed an "identical action"[3] alleging the same facts and raising the same legal issues as this action ("Linarte Action"). On the same day that Plaintiff Ramirez moved to consolidate these two identical actions, Plaintiff Linarte filed a Notice of Settlement, with settlement terms substantially similar to those proposed to Defendant by Plaintiff Ramirez two months earlier.

In the Settlement Agreement, Defendant has agreed to provide an uncapped full refund of the $29.00 purchase price[4] for each purchase of the Products (up to a maximum

---

percentage of the total benefits claimed by the Class.  The final number of claims will be submitted in advance of the Final Approval Hearing in the event that the Court wishes to reassess Ramirez Counsel's requested fee as a percentage of the total claims made by Class Members.

[3] Defendant used the term "identical action" to describe the Linarte Action when opposing Plaintiff Ramirez's Motion for Consolidation. *See* ECF No. 27, at 2.

[4] The $29.00 refund is a full refund of the purchase price but does not account for taxes and shipping charges.

of three units, or $87.00 total) to each Class Member who makes a timely and valid claim and provides proof of purchase, or $10.00 (up to a maximum of three units, or $30.00 total) to each Class Member who makes a timely and valid claim without proof of purchase. Class Members who receive direct notice will not be required to submit a Proof of Purchase because Defendant and/or third-party retailers possess documentation of their purchases of the Products. This is a remarkable recovery amounting to a near 100% refund for the majority of Class Members.

While Defendant has ceased selling the Products in the United States, pursuant to the Settlement Agreement, Defendant is required to include prominent disclosures on its packaging, websites, and all U.S.-facing marketing and advertising on any substantially similar "pressed pigment" products marketed for use in the eye area in the future. This injunctive relief is of considerable value to consumers and the public at large.

Ramirez Counsel remain confident that Plaintiffs' claims are strong. However, consumer class actions are risky to prosecute. Defendant, a well-resourced company, is represented by a reputable, national law firm and planned to vigorously defend itself but for the Settlement. Ramirez Counsel could not ignore the inherent risk that Plaintiffs would certainly face at class certification, summary judgment, and trial. Plaintiffs asserted claims on behalf of consumers nationwide. At class certification, Plaintiffs would certainly face the argument that choice-of-law issues create manageability problems that do not exist in the settlement context. *See In re Hyundai & Kia Fuel Econ. Litig*., 26 F.3d 539, 563 (9th Cir. 2019). Defendant would have argued that Plaintiffs could not prove the Products were devoid of value. Plaintiffs also would have been required to complete costly expert work to show that Class Members paid a price premium due to Defendant's alleged misrepresentations.

As a result of this litigation, Class Members will benefit from an excellent Settlement that requires Defendant to pay uncapped cash refunds to Class Members who

purchased the Products and submit timely and valid claims. In addition, consumers and the general public will benefit from the Settlement Agreement's provision that Defendant will include prominent disclosures on its packaging, websites, and all U.S.-facing marketing and advertising on any substantially similar "pressed pigment" products marketed for use in the eye area in the future. Even without assigning any value to this significant injunctive relief, the monetary relief available to the Class is valued at more than $4,000,000. Ramirez Counsel seek reasonable compensation for their efforts on behalf of Plaintiffs and the Class. Ramirez Counsel requests a fee award of $716,240.00 and reimbursement of $923.59 in out-of-pocket expenses that they incurred prosecuting this action.

Prior to filing the instant motion, Ramirez Counsel engaged in multiple discussions with Linarte Counsel in an effort to present this Court with one unified motion for attorneys' fees. During those discussions, Ramirez Counsel and Linarte Counsel exchanged lodestar data and Ramirez Counsel proposed splitting any attorneys' fees awarded by this Court in a ratio consistent with their respective lodestars.[5] Having received no alternative proposals or pushback from Linarte Counsel, Ramirez Counsel reasonably believed that there was agreement to split any awarded attorneys' fees in accord with the firms' respective lodestars. Accordingly, Ramirez Counsel drafted and sent Linarte Counsel a unified motion for attorneys' fees to be approved by Linarte Counsel before being filed with this Court. On December 16, 2021, after receiving the draft motion for attorneys' fees, Linarte Counsel requested that Ramirez Counsel agree to a 50-50 fee split. When Ramirez Counsel responded that such a split was not justified by Linarte Counsel's lodestar and made a counter-proposal, Linarte Counsel informed

---

[5] Ramirez Counsel's representation to Linarte Counsel regarding its lodestar was entirely consistent with the lodestar set forth in the instant motion. Linarte Counsel represented to Ramirez Counsel that its lodestar, as of December 14, 2021, was between $225,000 and $250,000.

1    Ramirez Counsel that it would not participate in filing a unified motion for attorneys' fees

2    and ceased communicating about this topic.

3          As this Court is aware, Plaintiff Ramirez litigated this case for more than five

4    months before Plaintiff Linarte knowingly filed an identical action, which was quickly

5    consolidated in response to Plaintiff Ramirez's motion for the same. It is undisputed that

6    Plaintiff Ramirez unknowingly engaged in settlement negotiations with Defendant for

7    months while Defendant and Linarte Counsel were engaging in undisclosed parallel

8    settlement negotiations before the Linarte Action was even filed and while Ramirez

9    Counsel was litigating this case. Ultimately, the Settlement Agreement reached was

10   nearly identical to the terms proposed by Ramirez Counsel to Defendant months earlier.

11   In other words, Linarte Counsel's pre-filing settlement negotiations, while Plaintiff

12   Ramirez was actively litigating an identical action, did not secure any class benefits that

13   Ramirez Counsel had not already proposed to Defendant. As Plaintiff Ramirez maintains

14   that Linarte Counsel's efforts towards settlement did ultimately benefit the Class and

15   should be compensated accordingly, Ramirez Counsel offered to work with and support

16   Linarte Counsel's request for attorneys' fees in excess of their total lodestar via a

17   multiplier.

18         The undisputed facts remain that Plaintiff Ramirez litigated this identical action for

19   more than five months before Plaintiff Linarte filed her action, Plaintiff Ramirez proposed

20   near-identical settlement terms to Defendant months before the Linarte Action was filed,

21   which Defendant rejected, Plaintiff Ramirez provided significant input regarding the

22   terms of the Settlement Agreement, which materially altered the Settlement as drafted by

23   providing additional protections to Class Members, and Plaintiff Ramirez is a viable and

24   adequate class representative. For these reasons, among others discussed herein, Ramirez

25   Counsel's motion should be granted.

-10-

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff Ramirez filed this Action on May 12, 2020, alleging misrepresentations and omissions of material information in the advertising, marketing, and labeling of Defendant's Products.

Prior to filing the instant action, Ramirez Counsel issued a pre-suit notice and demand pursuant to the CLRA, spent significant time communicating with Plaintiff Ramirez, investigating facts, researching the law, and preparing a well-pleaded complaint. Ramirez Counsel then worked extensively with a well-qualified pharmacologist to evaluate Defendant's misrepresentations and the potential dangers resulting therefrom. Ramirez Counsel began negotiating settlement of the instant action with counsel for Defendant in June 2020 and continued settlement discussions into August 2020. Those negotiations, which took place while Ramirez Counsel continued to litigate against Defendant, included informal discovery exchanges, analysis of sales and other data, and the propounding of interrogatories, requests for the production of documents, and requests for admission. During the course of these settlement negotiations, Ramirez Counsel proposed settlement terms which were substantially similar to those in the operative Settlement Agreement.[6] More than five months after the instant action was filed, on October 23, 2020, Plaintiff Linarte filed an "identical action"[7] alleging the same facts and raising the same legal issues as this action.

On November 20, 2020, Plaintiff Ramirez moved to have this action and the Linarte Action consolidated in this Court. ECF No. 26. That same day, Plaintiff Linarte filed a

---

[6] Although Ramirez Counsel does not believe detailing its rejected settlement offer here would violate Federal Rule of Civil Procedure 408, in an abundance of caution, such details are being withheld. However, Ramirez Counsel is prepared to share any or all such settlement communications and details with the Court upon request.

[7] Defendant used the term "identical action" to describe the Linarte Action when opposing Plaintiff Ramirez's Motion for Consolidation. *See* ECF No. 27, at 2.

1   Notice of Settlement, with settlement terms near-identical to those proposed by Plaintiff
2   Ramirez and rejected by Defendant two months earlier.

3   **III.    AUTHORITY AND ARGUMENT**

4   **A. Ramirez Counsel's requested fees are reasonable.**

5   Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable
6   costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Once
7   it is established that a party is entitle to attorneys' fees, "[i]t remains for the district court
8   to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).
9   "Attorneys' fees provisions included in proposed class action settlement agreements are,
10  like every other aspect of such agreements, subject to the determination whether the
11  settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co*., 327
12  F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); *see also In re Coord.*
13  *Pretrial Proceedings in Petroleum Prods. Antitrust Litig*., 109 F.3d 602, 607 (9th Cir.
14  1997) ("Reasonableness is the goal, and mechanical or formulaic application of either
15  method, where it yields an unreasonable result, can be an abuse of discretion.").

16  A district court has discretion to award attorneys' fees in a class action by applying
17  either a lodestar methodology or a percentage-of-the-fund methodology. *See Fischel v.*
18  *Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002).  Here, the Settlement
19  Agreement does not include a common fund, but rather provides an uncapped claims-
20  made cash benefit to the Class, and thus Ramirez Counsel believes the lodestar
21  methodology is most appropriate.

22  In the context of the lodestar methodology, [t]he most useful starting point for
23  determining the amount of a reasonable fee is the number of hours reasonably expended
24  on the litigation multiplied by a reasonable hourly rate." *Uriarte-Limon v. Hundley*, No.
25  EDCV20640JGBSPX, 2020 WL 7315085, at *6 (C.D. Cal. Oct. 30, 2020) (quoting
26  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also McGrath v. Cty. of Nev*., 67

27
28

-12-

F.3d 248, 252 (9th Cir. 1995). Once the court has calculated that amount, known as the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Uriarte-Limon*, No. EDCV20640JGBSPX, 2020 WL 7315085, at \*6 (quoting *Hensley*, 461 U.S. at 434).

### 1. Ramirez Counsel's Hours

Although the Settlement was reached reasonably early within the litigation timeline, Ramirez Counsel devoted significant time and resources to investigating the claims well before commencing the lawsuit. Straus Decl. ¶ 18. Ramirez Counsel keep contemporaneous time records for all cases within the firm, including the present case. *Id.* To date, Ramirez Counsel spent 682.2 hours for a total lodestar of $477,493.10. *Id.* The efficiency with which Ramirez Counsel helped obtain this Settlement is itself a benefit to the Class. There is little doubt that Ramirez Counsel's litigation of this action prompted Defendant's settlement negotiations with Linarte Counsel. Courts recognize that classes benefit from early resolution when "further litigation would have delayed any potential recovery for the Class and have been costly and risky." *Perkins v. Linkedin Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at \*2 (N.D. Cal. Feb. 16, 2016); *see also In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007, 2014 WL 12591624, at \*4 (C.D. Cal. Jan. 10, 2014) (recognizing the benefit of counsel's "effective and efficient" prosecution). Here, the time that Ramirez Counsel spent during the course of this litigation reasonably reflect the work performed on behalf of the Class. *Id.* ¶ 40.

### 2. Ramirez Counsel's Rates

In order to determine the reasonableness of attorneys' fees, the attorneys' hourly rates should be calculated according to the prevailing market rates in the relevant jurisdiction. *Acosta v. GT Drywall*, No. EDMC170006JGBKKX, 2018 WL 1041412, at

*2 (C.D. Cal. Jan. 22, 2018) (citing *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009)); *Acosta*, No. EDMC170006JGBKKX, 2018 WL 1041412, at *2 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979–80 (9th Cir. 2008) ("affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate.") The relevant community is that in which the district court sits. *Acosta*, No. EDMC170006JGBKKX, 2018 WL 1041412, at *2 (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

In recent years, this Court has approved hourly rates of $778.50 for partners with almost thirty years of experience and $495 for the most junior associate. *WB Music Corp. v. Royce Int'l Broad. Corp.*, No. EDCV16600JGBDTBX, 2018 WL 6177237 (C.D. Cal. July 9, 2018), *aff'd sub nom. WB Music Corp. v. Stolz*, 814 F. App'x 286 (9th Cir. 2020); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *15, *19 (C.D. Cal. Mar. 24, 2014) (holding that hourly billing rates between $825 to $930 in 2011 to 2014 for a senior partner with twenty-nine years of experience, and hourly rates between $610 to $750 for junior partners were reasonable).

Ramirez Counsel has requested rates of $875 for Daniel K. Bryson, $875 for Gregory F. Coleman, $750 for Caroline Ramsey-Taylor, $750 for Jonathan Cohen, $750 for Alex R. Straus, and $575 for William Ladnier. Straus Decl. ¶ 28. Ramirez Counsel has provided the Court with a declaration describing the background and experience of the aforementioned attorneys and set the hourly rates for attorneys and staff members based on a variety of factors, including: the experience, skill, and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation, and ability of the attorneys and staff members. *Id.* ¶¶ 25-30.

-14-

Ramirez Counsel submits that the hourly rates requested here are comparable to attorneys of similar experience and qualifications within the Central District of California. *Id.* Daniel Bryson and Gregory Coleman have over thirty years' experience, have been lead counsel in multiple cases that have been consolidated into multi-district litigation, and have been named as Super Lawyers. *Id.* ¶ 29. Gregory Coleman has been named one of the Top 100 Trial Lawyers by the American Trial Lawyers Association, among other awards. *Id.* Further, as detailed in Ramirez Counsel's firm resumes, Ramirez Counsel has been named Class Counsel in numerous class action settlements. **Exhibits A**, **B** and **C**. (firm resumes). Caroline Ramsey Taylor and Jonathan Cohen are partners with nine and 15 years of experience, respectively and have been appointed as class counsel in numerous cases. Alex Straus been practicing law for over 12 years and William Ladnier has been an attorney for over six years. Straus Decl. ¶ 29. All six of these attorneys have considerable class action experience and expertise. *Id.*

The hours and rates submitted by Ramirez Counsel yield a lodestar of $477,493.10, which does not account for the additional time and effort that will be required to effectuate the Settlement if and when it receives final approval from the Court. *Id.* ¶ 30.

3. <u>Ramirez Counsel's Requested Multiplier</u>

Ramirez Counsel is requesting a lodestar multiplier of 1.5. The multiplier is determined by dividing the total fees sought by the lodestar. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013). "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee case." *Id.* (citation omitted). Multipliers are commonplace in attorneys' fee awards in class actions, especially when done on a contingent basis, as is the case here. *See* John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only

1   for the second of these functions. If he is paid no more, competent counsel will be

2   reluctant to accept fee award cases."); *see also* Richard A. Posner, Economic Analysis of

3   Law 783 (8th ed. 2011) ("A contingent fee must be higher than a fee for the same legal

4   services paid as or after they are performed. The contingent fee compensates the lawyer

5   not only for the legal services he renders but for the loan of those services. The implicit

6   interest rate on such a loan is high because the risk of default (the loss of the case, which

7   cancels the client's debt to the lawyer) is much higher than in the case of conventional

8   loans, and the total amount of interest is large not only because the interest rate is high

9   but because the loan may be outstanding for years—and with no periodic part payment, a

10   device for reducing the risk borne by the ordinary lender.").

11       The reasonableness of a multiplier may be assessed by courts considering the

12   following factors: "(1) the time and labor required, (2) the novelty and difficulty of the

13   questions involved, (3) the skill requisite to perform the legal service properly, (4) the

14   preclusion of other employment by the attorney due to acceptance of the case, (5) the

15   customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by

16   the client or the circumstances, (8) the amount involved and the results obtained, (9) the

17   experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case,

18   (11) the nature and length of the professional relationship with the client, and (12) awards

19   in similar cases." *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975); *see*

20   *also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (noting that the

21   district court found a 3.65 multiplier to be reasonable after considering the factors in

22   *Kerr*).

23       As Courts in California have noted, "[m]ultipliers in the 3-4 range are common in

24   lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Alt.*

25   *Richfield Co*., 901 F. Supp. 294, 298 (N.D. Cal. 1995). While this litigation may not be

26   deemed exceedingly "lengthy" in comparison to other class action litigation, the other

27

28

-16-

factors argue strongly for the modest multiplier requested, particularly the excellent and unusual benefits to the Class and consumers-at-large, which include both a full refund of the purchase price and significant injunctive relief.

a. *The Time and Labor Required*

Ramirez Counsel has spent more than 682.2 hours on this action to date. Straus Decl. ¶ 18. Ramirez Counsel spent substantial time investigating and litigating this case, including, but not limited to, the following: reviewing all labeling and marketing of the Products, including all available public statements, becoming thoroughly grounded in the relevant federal regulations and FDA testing guidance, retaining consulting experts, researching relevant supplement case law and controlling state law, reviewing the records in other relevant cosmetic cases; carefully crafting the complaints, negotiating settlement with Defendant, preparing a well-pleaded complaint, providing significant input regarding the terms of the Settlement Agreement, which materially altered the Settlement as drafted by providing additional protections to Class Members, working with the settlement administrator to design an effective notice program, and overseeing the claims process. *Id*. ¶ 19. The work by attorneys and staff was required and necessary to make sure this case was properly vetted. *Id*. Ramirez Counsel submits that the extensive time expended for this case weighs in favor of the fee request.

b. *The Novelty and Difficulty of the Factual and Legal Questions Involved and the Skill Required to Perform the Legal Service Properly*

Ramirez Counsel drew on their experience in litigating consumer protection and failure-to-warn class cases to develop the legal theories asserted and strategy for obtaining evidence to support the Class's claims. The quality of their representation is reflected in the work they performed throughout the case and, ultimately, in the favorable Settlement for the Class. *See Moreyra v. Fresenius Med. Care Holdings, Inc*., No. SACV-10-517 JVS (RZx), 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (noting that the result is

"[t]he single clearest factor reflecting the quality of class counsels' services") (quoting *In re Heritage Bond Litig*, No. 02-ML1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005)).

Ramirez Counsel was also forced to navigate the unusual circumstance of litigating and attempting to negotiate a class settlement with Defendant in good faith, while Defendant was simultaneously and separately negotiating a class settlement with an attorney who had not yet filed a case. Although Ramirez Counsel was not contemporaneously aware that Defendant was negotiating a separate class settlement with a third party during this litigation, Ramirez Counsel was ultimately forced to file additional motions and expend significant time and energy protecting the Class upon learning of Defendant's parallel settlement efforts. Ultimately, the proposed settlement agreement reached in the Linarte Action was near identical to the settlement terms previously demanded by Ramirez Counsel during nearly three months of settlement negotiations with Defendant. Despite the unconventional tactics by Defendant and Linarte Counsel in the Linarte Action, Ramirez Counsel worked effectively and extensively with Linarte Counsel to strengthen the terms of the Settlement Agreement for the protection and benefit of the Class, including, but not limited to, the exclusion of personal injury claims from the release. Ramirez Counsel strongly believe that Defendant would not have agreed to the $29.00 per unit cash payment or the direct notice provisions in the ultimate Settlement Agreement had it not engaged in months-long negotiations with Ramirez Counsel and known that Ramirez Counsel would contest any settlement agreement that fell short of these terms.

Ramirez Counsel's skill in negotiating class action settlements led to an early and robust settlement with tangible benefits, as opposed to drawn out litigation with a risk that the Class could receive nothing. Defendant is represented by Gibson, Dunn, & Crutcher LLP, which is headquartered in this District. Gibson Dunn is one of the premier consumer

class action defense firms in the United States. Gibson Dunn partner Christopher Chorba is Co-Chair of the firm's Class Actions Practice Group and has been recognized in *Chambers USA: America's Leading Lawyers for Business* and in *Best Lawyers in America* for commercial litigation.[8] During settlement negotiations, defense counsel indicated that Defendant was willing and able to litigate this case through trial if a settlement was not reached. Ramirez Counsel's active participation in a favorable settlement despite the opposition of Defendant's counsel also supports their fee request. *See, e.g.*, *Lofton v. Verizon Wireless LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award). This factor weighs in favor of the fee request.

### c. *The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case, the Customary Fee, Whether the Fee Is Fixed or Contingent, Time Limitations Imposed by the Client or the Circumstances*

Attorneys also are entitled to a larger fee award when their compensation is contingent in nature, as here. *Carter v. San Pasqual Fiduciary Tr. Co.*, No. SACV151507JVSJCGX, 2018 WL 6174767, at *25 (C.D. Cal. Feb. 28, 2018); *Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for contingency cases." *Carter*, 2018 WL 6174767, at *9.

Ramirez Counsel's fee request also reflects that the case was risky and handled on a contingency basis. Ramirez Counsel litigated this case without any guarantee that they would recover any fees, costs, or time. Further, Ramirez Counsel's work on this case precluded filing other cases. Straus Decl. ¶ 20. Ramirez Counsel devoted extensive time

---

[8] *See* https://www.gibsondunn.com/lawyer/chorba-christopher/.

to this case while foregoing opportunities to work on other cases. Further, due to an inevitable "battle of the experts" that Plaintiffs would have surely encountered at the summary judgment stage, Ramirez Counsel faced the very real risk that they would not recover any fees and costs. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046-47. ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.")

In addition, consumer fraud cases are more uncertain than certain other types of class actions. *See Kakani v. Oracle Corp.*, No. 06-06493WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 1, 2007) (noting that there is inherent risk in pursuing consumer fraud class actions). Here, Ramirez Counsel assumed the risk of challenging Defendant, a well-resourced company that would have continued to vigorously defend its business practices had the litigation gone forward. Absent the Settlement, Defendant would have had the opportunity to bring motions to dismiss, motions for summary judgment, and to oppose class certification, which would have increased the possibility that Class Members might recover nothing. The risk of little or no recovery weighs in favor of the requested fee award. See *Destefano*, 2016 WL 537946, at *17 (noting the "substantial" risk associated with "obtaining [and maintaining] class certification"); *Bower v. Cycle Gear, Inc.*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (noting risks of obtaining class certification, surviving summary judgment, prevailing at trial, and "withstanding a potential appeal"); *Roberti v. OSI Sys., Inc.*, No. CV13-09174 MWF (MRWx), 2015 WL 8329916, at *6 (C.D. Cal. Dec. 8, 2015) (the defendant's "vigorous opposition" represented a "substantial" risk weighing in favor of the requested attorney's fees). Ramirez Counsel submits that this factor weights in favor of the fee request.

1

*d.   The Amount Involved and the Results Obtained*

2   "The overall result and benefit to the class from the litigation is the most critical

3   factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046.;

4   *Vizcaino*, 290 F.3d at 1048 ("Exceptional results are a relevant circumstance.").

5   Ramirez Counsel achieved substantial benefits for the Class in this case: Class

6   Members who receive direct notice (i.e., the 85,935 Class Members for whom contact

7   information was provided by Defendant and Sephora, who also had proof of their

8   purchases) and make timely and valid claims will receive a cash payment of $29.00 per

9   unit (up to a maximum of three units, or $87.00 total). Non-direct notice Class Members

10   can receive $10.00 per unit (up to a maximum of three units, or $30.00 total) even without

11   any proof of purchase provided by the Class Member. Further, any additional Class

12   Members with proof of purchase will also receive a full refund of $29.00 per unit purchase

13   price (up to a maximum of three units, or $87.00 total). Defendant has agreed to pay all

14   timely and valid claims without a cap of any kind. Class Members were unlikely to pursue

15   any relief on an individual basis and now most will recover the full amount of their

16   purchase(s) of Defendant's Products. *See Johnson v. Gen. Mills, Inc*., No. SACV 10-

17   00061-CJC, 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (finding settlement that

18   allowed recovery without proof of purchase to be "a good result for the class").

19   The benefits secured in this case are significant when compared to relief secured in

20   other consumer settlements. *See*, *e.g*., *Marty v. AnheuserBusch Cos*., No. 13-CV-23656-

21   JJO, 2015 WL 10858371, at *2 (S.D. Fla. Oct. 22, 2015) (providing for $0.50 to $1.75

22   per unit for multi-bottle packs of beer, capped at $50.00 per Settlement Class Household

23   with proof of purchase or $12.00 without proof of purchase); *Theodore Broomfield v.*

24   *Craft Brew All., Inc*., No. 17-CV-01027- BLF, 2020 WL 1972505, at *9 (N.D. Cal. Feb.

25   5, 2020) (providing for relief of $1.25 to $2.75 for a maximum of $10.00 without proof

26   of purchase or $20.00 with proof of purchase); *Schneider v. Chipotle Mexican Grill, Inc*.,

27

28

-21-

336 F.R.D. 588 (N.D. Cal. 2020) (providing for relief of $10.00 for class members without proof of purchase, $20.00 with proof of purchase up to a maximum of $30 per household); *Retta v. Millennium Prod., Inc*., No. CV15-1801 PSG AJWX, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) (providing for relief of up to $35.00 cash or $35.00 in vouchers without proof of purchase, and $60.00 in cash or up to $60.00 worth of vouchers with proof of purchase); *Lerma v. Schiff Nutrition Int'l, Inc*., No. 11CV1056-MDD, 2015 WL 11216701 (S.D. Cal. Nov. 3, 2015) (providing relief of $22.00 without proof of purchase and $46.00 with proof of purchase); *Winters v. Two Towns Ciderhouse, Inc*., No. 20-CV-00468-BAS-BGS, 2021 WL 1889734 (S.D. Cal. May 11, 2021) (average class member payout of $17.70); *Kumar v. Salov N. Am. Corp*., No. 14-CV-2411- YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017), aff'd, 737 F. App'x 341 (9th Cir. 2018) (providing relief of $5.00 without proof of purchase and $0.50 with proof of purchase per product purchased).

Compared to other settlements that have provided relief to purchasers of consumer cosmetic products, the benefits conferred in this case are significant and extraordinary. All of the cases that have been cited herein provide relief that is significantly less than the full purchase price refund secured here. In addition, many of the cases cited herein also involve capped settlement funds; hence, a claimant's ultimate payout could have been reduced, *pro rata*, depending on the number of claims and attorneys' fees awarded. The fact that Defendant has agreed to pay a full refund of the purchase price to those receiving direct notice and/or proof of purchase, and $10.00 without proof of purchase for all timely and valid claims in an uncapped fashion eliminates any concern that a Class Member's claim will be reduced. In addition, the Settlement requires Defendant to include prominent disclosures on its packaging, websites, and all U.S.-facing marketing and advertising on any substantially similar "pressed pigment" products marketed for use in the eye area for a period of five years. This injunctive relief is of significant value to consumers and the

-22-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF RAMIREZ'S MOTION FOR ATTORNEYS' FEES AND EXPENSES
Case No. 5:20-cv-01016-JGB-SHK

public-at-large. Defendant has also stopped selling the Products in the United States, which makes Class Members and consumers-at-large significantly safer. Ramirez Counsel submits that this factor also weighs in favor of the fee request.

Although this Settlement is structured as a claims made settlement, it still provides substantial results to the Class. Courts throughout the Ninth Circuit have approved claims-made settlements in cases providing far less significant benefits than those provided under the instant Settlement and in which the class participation rates were less impressive. *See In re MagSafe Apple Power Adapter Litig.,* 5:091-cv-01911-EJD, 2015 WL 428105 (N.D. Cal., Jan. 30, 2015) (approving claims made settlement and awarding fees of $1.7 million in class case where fewer than 110,000 of the 7.1 million class members participated in the settlement benefits consisting of cash refunds and product replacement program); *Create-A-Card, Inc. v. INTUIT, Inc.*, No. CV-07-6452-WHA, 2009 U.S. Dist. LEXIS 93989 (N.D. Cal. Sept. 22, 2009) (approving capped, claims made settlement providing cash refund for data recovery and reconstruction, and awarding fees in class case with modest claims rate). *See also Vargas v. Ford Motor Co.*, No. CV-12-08388-AB, 2017 U.S. Dist. LEXIS 177149, *8 (C.D. Cal. Oct. 18, 2017) ("…that the settlement is structured as a claims made settlement does not mean it is ineligible for approval. It is not a remarkable structure, and in fact, it obliges Defendant to pay out each and every claim, without limitation.").

"There is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements." *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 U.S. Dist. LEXIS 158577, *31-32 (S.D. Cal. Nov. 5, 2012) (citing *Guschausky v. Am. Family Life Assur. Co.*, 851 F. Supp. 2d 1252, 1259 (D. Mont. 2012); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash. 2009) (approving claims-made process where class members were required to "answer two reasonable claim forms and submit a total

-23-

of 10 photographs of the mold spotting."); *Lemus v. H&R Block Enters. LLC*, 2012 U.S. Dist. LEXIS 119026 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Morales v. Stevco, Inc.*, 2012 U.S. Dist. LEXIS 68640 (E.D. Cal. May 16, 2012) (recommending final approval of claims-made settlement); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797 (granting final approval of claims-made settlement) (N.D. Cal. Feb. 6, 2012)).

The typical concern that courts have regarding claims-made settlements – that the defendant is likely to bear only a fraction of the liability to which it agrees – is not present here. *In re TJX Cos. Retail Sec. Breach Litg.*, 584 F.Supp.2d 395, 405 (D. Mass. 2008). In this case, the Settlement provides considerable benefits to all Class Members, including a full refund of the retail purchase price of $29 per unit (up to a maximum of three units, or $87.00 total) to each Class Member who makes a timely and valid claim and provides proof of purchase if proof of purchase is not already proven, or $10.00 (up to a maximum of three units, or $30.00 total) to each Class Member who makes a timely and valid claim without proof of purchase.

Moreover, the Class's response to the Settlement has been overwhelming. To date, 83,606 Class Members have submitted claims in connection with their collective purchase of the Products for an aggregate claim value of $2,853,732.00, thereby proving that the notice program is efficacious, and the settlement benefits are valuable to the Class. Schey Decl. ¶¶55-57 (ECF No. 54-5). Considering the fact that direct notice was provided to 85,935 Class Members and Defendant's sales of the Products totaled $4,341,112.00, this is an outstanding result, as the current number of submitted claims roughly equates to 97% of the Class Members who received direct notice. *See Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less."); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (ANx), 2015 WL 4537463 (C.D. Cal. July 27, 2015) (approving class

-24-

settlement and awarding attorneys' fees in claims-made settlement with 3% claims rate); 2 MCLAUGHLIN ON CLASS ACTIONS § 6:24 (14th ed.) (participation rate as low as 3% not unusual in consumer class actions).

> e. *The Experience, Reputation and the Ability of the Attorneys, the 'Undesirability' of the Case, the Nature and Length of the Professional Relationship with the Client*

As discussed above, Ramirez Counsel has considerable experience in litigating class action cases. However, accepting and litigating this action was not "undesirable" and the length of the professional relationship with the clients was not prolonged or previously established. This factor is neutral.

> f. *Awards in Similar Cases*

In *Hill v. Canidae Corp.*, this Court approved a claims made class settlement involving pet food mislabeling claims litigated by the undersigned counsel. No. 5:20-cv-01374-JGB-SP (C.D. Cal. Sept. 28, 2021) (ECF No. 79). After determining that class counsel's proposed hourly rates were reasonable and recognizing that litigating this case precluded class counsel from working on other matters and was handled on a contingency fee basis, the Court applied a 2.0 multiplier and awarded attorneys' fees in the amount of $953,740.00. *Id.* As the same factors impacted Ramirez Counsel here and their requested multiplier of 1.5 is significantly less than what was ultimately awarded in *Canidae* (2.0), Ramirez Counsel's motion should be approved just like in *Canidae*.

In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded." *Vizcaino*, 290 F.3d at 1051 n.6; *see also Hopkins v. Stryker Sales Corp.*, 11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). In the recent $50 million settlement in *Spann*, Judge Olguin held that a multiplier of 3.07 was "well within the range of reasonable multipliers." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D.

Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); *Steiner v. Am. Broad. Co*., 248 Fed. Appx. 780, 783 (9th Cir.2007) (affirming award with multiplier of 6.85); *Buccellato v. AT & T Operations, Inc*., No. CV 10–00463 LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding a 4.3 multiplier "reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary."); *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 244, 255 (2001) ("Multipliers can range from 2 to 4 or even higher.").

Other district courts have likewise concluded that remarkable swiftness in resolving litigation warrants a positive multiplier. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig*., No. 2672 CRB (JSC), 2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017) (citing *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *9 (N.D. Cal. Apr. 15, 2015)) (holding that a positive multiplier was appropriate "given the efficiency with which class counsel litigated [the] action"); *Browne v. Am. Honda Motor Co., Inc*., No. 09-cv-06750 MMM, 2010 WL 9499073, at *11 (C.D. Cal. Oct. 5, 2010) (applying a positive lodestar multiplier in part because of "the rapidity with which a settlement was reached").

Here, the full refund of the purchase price and significant injunctive relief secured in the Settlement Agreement exceeds the relief secured in other settlements where multipliers were awarded. *E.g.*, *Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020) (awarding a 1.25 multiplier); *Retta v. Millennium Prod., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) (awarding a 3.5 multiplier and noting Class Counsel "achieved results that represent a significant recovery for the Class"); *Winters v. Two*

*Towns Ciderhouse, Inc.*, No. 20-CV-00468-BAS-BGS, 2021 WL 1889734 (S.D. Cal. May 11, 2021) (awarding a 1.675 multiplier).

In sum, the factors support Ramirez Counsel's requested 1.5 multiplier. Ramirez Counsel spent over 682.2 hours litigating this case to resolution after extensive investigative work done to ensure the case was properly vetted. Further, Ramirez Counsel took the case on a contingent basis and to the preclusion of other work. As a result, Ramirez Counsel was able to achieve significant relief for the Class that is superior to many other mislabeling settlements despite the challenges presented by this litigation. Ramirez Counsel has substantial experience in litigating consumer class action cases and used that experience to efficiently litigate this case and achieve an excellent result for the Class. Lastly, Ramirez Counsel litigated this case with significant risks due to the contingent nature of their representation. There was no certainty that Ramirez Counsel would ever be paid and could have litigated this case for years and not received any compensation for their time, efforts, and costs expended. Given these circumstances, Ramirez Counsel's multiplier of 1.5 is reasonable.

### g. *Reaction of the Class*

The Court may also consider the reaction of the class to the settlement agreement. *Carter,* 2018 WL 6174767, at *9 (citing *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048); *In re Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections from the class is also a factor in determining the proper fee award.")).

Counsel worked diligently to assure that direct notice was provided to as many Class Members as possible. Schey Decl. ¶¶ 18-48 (ECF No. 54-5). After subpoenaing Sephora for contact information, Sephora provided the Settlement Administrator with contact information for 76,546 Class Members. Defendant similarly provided contact information for 10,568 Class Members. Following verification and de-duplicating, direct notice was able to be sent to 79,653 Class Members via email and 6,282 Class Members

-27-

via postcard. Assuming each of these Class Members who received direct notice only purchased one of the Products, then direct notice was sent to Class Members representing $2,492,115 of the $4,341,112 in sales which is 57% of the entire class.

As of December 12, 2021, the Settlement Website has received 117,833 unique visits. Straus Decl. ¶ 31. The Settlement Administrator reports that it has received 83,606 claims for a total payment of cash benefits in the amount of $2,853,732.00 and an average claim value of $34.13. *Id*. Significantly, more than 12,000 of these claims are from Class Members who either provided proof of purchase or received direct notice because Defendant already has documentation of their purchases. *Id*. To date, no objections and only one opt-out have been received (from a Class Member who indicates that she already received a refund). *Id*. The claims period ends January 12, 2022, and the Settlement Administrator continues to receive and process claims. Updated data regarding the number of claims will be submitted in advance of the Final Approval Hearing.

**B. Ramirez Counsel's litigation costs were necessarily and reasonably incurred.**

Ramirez Counsel's request includes reimbursement of $923.59 in litigation costs, which included filing fees and research costs. Straus Decl. ¶ 51. "It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for 'reasonable expenses that would typically be billed to paying clients in non-contingency matters,' i.e., costs 'incidental and necessary to the effective representation of the Class.'" *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (citation omitted). These costs were necessary to the litigation, reasonable in amount, and the type of costs typically billed to paying clients. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *42 (N.D. Cal. July 22, 2020) (approving reimbursement of costs for expert fees, travel, transcripts, document management, copying, mailing and serving documents, electronic research, and filing and court fees); *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-

04922-HSG, 2020 WL 870928, at *9 (N.D. Cal. Feb. 21, 2020) (approving "professional service fees (for experts and investigators), travel fees, and discovery-related fees").

## IV.    CONCLUSION

For the above reasons, Plaintiff Ramirez respectfully requests that the Court grant this Motion and award Ramirez Counsel $716,240.00 in attorneys' fees, which includes $923.59 in litigation costs.

Dated: December 17, 2021.                    Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By:    _/s/ Alex R. Straus_

Alex R. Straus (SBN 321366)
280 S. Beverly Drive
Beverly Hills, CA 90212
(917) 471-1894 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Caroline Ramsey Taylor
518 Monroe Street
Nashville, TN 37208
(615) 921-6500 (phone)
(615) 921-6501 (fax)
ctaylor@milberg.com

-29-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Jonathan B. Cohen
William A. Ladnier (CA Bar No. 330334)
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
jcohen@milberg.com
wladnier@milberg.com

*Attorneys for Plainitff Ramirez and the
Proposed Settlement Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF RAMIREZ'S MOTION FOR ATTORNEYS' FEES AND EXPENSES
Case No. 5:20-cv-01016-JGB-SHK

## **CERTIFICATE OF CONFERENCE**

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 17, 2021.

By:   *s/ Alex R. Straus*
Alex R. Straus

# CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the email addresses registered in the CM/ECF system.

Executed on December 17, 2021, in Los Angeles, California.

By:   *s/ Alex R. Straus*
Alex R. Straus